**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

RODRICK D. CANNON,

    Petitioner,

    v.

JEFF NINES, Warden, et al.,

    Respondents.

Civil Action No.: JRR-23-722

**MEMORANDUM OPINION**

Rodrick D. Cannon brings this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, collaterally attacking his 2010 state conviction for attempted second-degree murder and related offenses. ECF 1. Respondents contend that Cannon's claims are noncognizable and without merit. ECF 23.[1] Cannon filed a reply in support of his Petition. ECF 24. The Petition is ready for resolution, and no hearing is necessary. Loc. R. 105.6 (D. Md. 2025); Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000). For the following reasons, the Court denies the Petition and declines to issue a certificate of appealability.

## I.    Background

### A. The Trial

On February 16, 2010, Cannon was indicted on charges of (1) attempted murder; (2) first-degree assault; (3) second-degree assault; (4) use of a handgun in the commission of a crime of violence; (5) carrying a handgun; (6) reckless endangerment; (7) possession of a regulated firearm

---

[1] Respondents initially filed a Limited Response arguing that Cannon's claims were procedurally defaulted. ECF 9. The Court directed Respondents to respond to the merits of Cannon's claims (ECF 13) and they have now done so.

after conviction of a disqualifying crime; and (8) possession of a regulated firearm after conviction

of a crime of violence. ECF 9-1 at 30-31.

A jury trial was held from September 9 through September 14, 2010. ECF 9-1 at 15.  The

Appellate Court of Maryland summarized the facts adduced at trial as follows:

> On January 14, 2010, at approximately 9:30 p.m., Charles Kirby began his shift as a tow truck driver for Laurel Adjustment Bureau. Part of his job was to perform vehicle repossessions. At the beginning of each shift, he would receive paperwork detailing all the jobs that he needed to perform during that shift. The repossession paperwork, which was provided by banks or financial institutions, typically included a description of the car to be repossessed and the owner's information, among other information.
>
> That night, Mr. Kirby was instructed to go to an apartment complex in Prince George's County and repossess a black 2007 Chevy Tahoe that was owned by [Cannon]. At approximately 11:00 p.m., he went to the apartment complex and spotted the vehicle, but he did not tow it at that time because there were people around, and he did not want anyone interfering. He explained that people often would "heckle" him or try to "intervene, get in the way, or just anything that may conflict with what [he was] doing."
>
> Mr. Kirby returned to the apartment complex shortly before 4:00 a.m. on the morning of January 15,  2010. The black Tahoe was still there. As he was backing his tow truck up to the black Tahoe, he observed "a figure coming down the steps . . . . with a firearm." The person came out of the front door of an apartment building, ran behind the Tahoe, and then up to the front door of the Tahoe. Although the person appeared to be "trying to stay concealed in the dark," Mr. Kirby could still see him in his truck mirror because the area was brightly lit at the time.
>
> At that point, Mr. Kirby, who was still sitting in his tow truck, called out the Tahoe owner's name, stating: "Roger,[2[ I see you popping out, I see your firearm." The person asked: "[W]hat you doing with the truck." Mr. Kirby turned around, looked at the person "dead in his face" and observed that he was standing no more than 10 or 11 feet away. In an attempt to defuse the situation, Mr. Kirby stated: "[K]eep your truck, . . . I don't want it." The person then stated: "Tell me what you doing to my truck." Mr. Kirby told the person to relax and that he was on the phone with the police, hoping that, by referencing the police, "[w]hatever he's going to do, maybe he won't do."
>
> At that point, Mr. Kirby turned back around and "hit the gas." As he attempted to drive away, he "started hearing the gun go off," and he was struck with a bullet in

---

[2] Petitioner's name is Roderick, nevertheless he was repeatedly referred to as Roger throughout the trial, without complaint from the defense, or explanation from any of the parties.

his lower back. He attempted to duck down, but he was shot a second time in his right shoulder. He recalled that the shooter fired "[q]uite a few times."

Mr. Kirby drove to the entrance of the apartment complex and stopped when he no longer heard gunshots and believed that he was at a safe distance. He looked over his shoulder and observed the shooter get into the Tahoe and turn on the headlights. As the police arrived, Mr. Kirby observed the shooter exit the Tahoe and walk toward one of the apartment buildings.

Detective Latasha Young, the lead detective on the case, received a call about the shooting shortly after 4:00 a.m. She recalled receiving a broadcast on her radio while on her way to the apartment complex, which provided the following description: "B, slash, M, six, dash, 02, 240, gold teeth, light sweater, black [slacks]." [Cannon] was arrested at approximately 8:45 a.m. After receiving permission from [Cannon]'s wife to search their apartment, Detective Young recovered a pair of size 42 black pants in their bathtub with 28 rounds of 9mm ammunition in one of the pockets. The police also recovered approximately eleven 9mm shell casings from the parking lot around the black Tahoe. No gun was ever recovered.

Upon returning to the police station, Detective Young ran the license plate number from the black Tahoe through the Maryland Vehicle Administration database and confirmed that the vehicle was registered to "Roger Cannon" and "Shannon Denise Cannon." Various parts of the Tahoe's interior were swabbed, but none of the swabs tested positive for gunshot residue.

Several hours after the shooting, Mr. Kirby identified [Cannon] as the shooter from a photo array. The detective [Mason] who conducted the photo line-up testified that he attempted to lay out six photographs for Mr. Kirby to view. Mr. Kirby, however, identified [Cannon]'s photograph while it was still in the detective's hand, before the detective had the opportunity to place it onto the table. Mr. Kirby also identified [Cannon] as the shooter at trial.

During cross-examination of Mr. Kirby, defense counsel asked him about the written statement that he gave to the police. Mr. Kirby acknowledged that he failed to mention in his statement that he had called out the Tahoe owner's name when the shooter ran up to the Tahoe. He also agreed that he wrote in his statement that the shooter was approximately 20 feet away during the incident, stating: "Yeah, I might have said that having two bullets in me. I might not have been real --." Additionally, Mr. Kirby confirmed that he described the shooter in his statement as being approximately 6 feet, 2 or 3 inches tall, lighted skinned, and weighing about 220 pounds.

During cross-examination of Detective Young, defense counsel had [Cannon] show his teeth to the detective. Detective Young stated that she did not see any gold in his mouth. She also testified that she did not see any gold teeth in [Cannon]'s mouth

on the day of the shooting. She noted, however, that there are "pop-up" gold teeth "that you can buy at the store and take out and put in." Defense counsel asked her if she found any gold teeth in [Cannon]'s apartment during her search, and she replied that she had not. Detective Young also stated that she had recorded in [Cannon]'s arrest record that he was 6 foot 4 inches tall and weighed 240 pounds.

ECF 9-1 at 211-215 (footnotes omitted).

The jury found Cannon guilty of attempted second-degree murder, first-degree assault, second-degree assault, and reckless endangerment. ECF 9-1 at 32. Cannon was sentenced on December 17, 2010, to 30 years of incarceration, 25 years without the possibility of parole, for the attempted second-degree murder conviction, and a 5-year consecutive sentence for the reckless endangerment conviction. The assault convictions merged for sentencing purposes. *Id*. at 33.

**B.      Direct Appeal**

Cannon noted a timely direct appeal to the Appellate Court of Maryland. ECF 9-1 at 34. On December 2, 2011, Cannon's counsel filed a line voluntarily dismissing the appeal. *Id*. at 36. The court's mandate issued on December 5, 2011. *Id*. Subsequently, in 2016, after filing a petition for post-conviction relief, Cannon was granted leave to file a belated appeal on grounds that Cannon had not authorized his attorney to dismiss his appeal; the Appellate Court's mandate was recalled. *Id.* at 23.

Thereafter, Cannon filed an appeal raising one question: "Does the invited response doctrine permit a prosecutor to rebut and refute defense counsel's statement to the jury that a plea of not guilty is an assertion of innocence?" ECF 9-1 at 139. This claim concerned the fact that during opening statements, defense counsel stated that Cannon's not guilty plea indicated he denied shooting the victim. Counsel told the jury that pleading not guilty, Cannon was saying "I didn't do this[.] I didn't shoot anyone." *Id*. at 140. Cannon did not testify or offer any evidence at trial. *Id*. at 140. During closing arguments, the prosecutor asserted that the defense had offered

no evidence, that defense counsel's statement was hearsay and not evidence, and stated: "What we lawyers says is not evidence.  Unless you heard it from the mouth of someone else, that is not true." *Id*.  The court overruled defense counsel's objection.  *Id*.  On appeal, Cannon argued the trial court abused its discretion in permitting the prosecutor to comment on Cannon's innocence. *Id*. at 156.

On April 17, 2017, the Appellate Court of Maryland affirmed the judgment of the trial court.  ECF 9-1 at 210-25.  The Appellate Court agreed that the prosecutor's comments were not proper and exceeded the scope of the "open door" doctrine, as the prosecutor's statements were "not a reasonable response to counsel's opening statement"; nevertheless, the Appellate Court held that given the positive identification of Cannon as the shooter and the other evidence adduced against him, the error was harmless because it had not influenced the verdict.  The court's mandate issued on May 17, 2017.  *Id*. at 226.

Cannon filed a petition for writ of certiorari in the Supreme Court of Maryland.  ECF 9-1 at 227-37.  The sole question presented was whether "the prosecutor's repeated characterization of [Cannon's] purported assertion of innocence as 'not true'" was mere harmless error.  *Id*. at 228. Cannon argued that the Appellate Court of Maryland failed to conduct  a meaningful harmful error analysis. *Id*. at 234-35.  The Supreme Court of Maryland denied review on August 25, 2017 (*id*. at 269); Cannon did not seek review in the United States Supreme Court.

### C.    Postconviction Proceedings

Cannon filed a pro se petition for postconviction relief asserting that he was denied his right to a direct appeal due to ineffective assistance of counsel, and that several other errors were "not ripe" because he had not been provided an opportunity to litigate a direct appeal.  ECF 9-1 at

38-49.  As noted, Cannon was granted leave to file a belated appeal, after which the judgment of the circuit court was affirmed.

After conclusion of his direct appeal, on March 23, 2018, Cannon filed a pro se amended petition for post-conviction relief (ECF 9-1 at 270-309), which he later amended. *Id*. at 310-49; 355-68; 380-405. Cannon asserted the following claims:

(1) Ineffective assistance of counsel because counsel failed to require a showing of probable cause in a preliminary hearing before the district court.

(2) Trial Court error in responding to two notes from the jury without Cannon present, violating his right to be present at all stages of trial.

(3) Trial Court error in instructing the jury on both modalities of assault, causing an ambiguous verdict.

(4) The Trial Court lacked subject matter jurisdiction due to defective charging documents and failure to properly arraign Cannon.

On June 3, 2021, the State filed an opposition to the Petition.  ECF 9-1 at 485-97.  On August 13, 2019, Counsel from the Office of the Public Defender entered an appearance on Cannon's behalf. *Id*. at 369.  Cannon, through counsel, on March 8, 2022, filed a supplemental petition for post-conviction relief, incorporating the allegations previously raised and asserting the following additional allegations of errors:

(5) Ineffective assistance of counsel in failing to file a motion for modification of sentence and application for review of sentence by a panel.

(6) Cannon's conviction for reckless endangerment should merge into his conviction for attempted second-degree murder.

(7) Ineffective assistance of counsel for failing to object when the name of a potential witness was not read to the prospective jurors during the jury selection process, or failing to object when that witness testified.

(8) Ineffective assistance of counsel for failing to object to the jury instruction regarding first-degree assault and the specific element of use of a firearm.

(9) Ineffective assistance of counsel for withdrawing the motion to suppress without Cannon's consent.

(10)    Ineffective assistance of counsel for failing to object to the reasonable doubt jury instruction.

ECF 9-1 at 470-83.

The State responded to the supplemental petition (*id*. at 485-97), and a postconviction hearing was held on April 6, 2022. *Id*. at 27-28; ECF 23-3. On May 13, 2022, the post-conviction court issued a memorandum opinion and order which granted Cannon permission to file a belated motion for modification of sentence and application for review of sentence by a panel, and ordered that Cannon's reckless endangerment conviction merge with his attempted second-degree murder conviction. *Id*. at 498-509. Relief was denied as to all other claims. *Id*.

On July 18, 2022, Cannon filed an application for leave to appeal the denial of post-conviction relief. ECF 9-1 at 512-27. This Court previously recounted the following regarding Cannon's efforts in this regard:

> The parties agree that Cannon raised the claims presented in his federal petition in his state post-conviction proceedings. ECF 1 at 5-11; ECF 9 at 27. Respondents argue, however:
>
> > To be sure, Cannon attempted to file an application for leave to appeal the denial of his UPPA petition, however, he failed to remit the requisite filing fee or timely request a waiver of the fee. The Circuit Court for Prince George's County ordered Cannon to show cause why his application should not be stricken within fifteen days, and Cannon failed to timely respond. The court therefore struck Cannon's application for leave to appeal.
>
> ECF 9 at 27. But Cannon explains that on July 26, 2022, he wrote to the state court requesting a fee waiver, but he did not then have access to the court approved forms. ECF 12-1 at 5. Thereafter he received forms from the state circuit court clerk and submitted the motion for fee waiver. He then followed up by writing to the court clerk to inquire whether the fee waiver had been received. ECF 12-2.
>
> When the intermediate appellate court later administratively closed Cannon's appeal, the court noted that the Circuit Court had directed Cannon to show cause why the fee had not been paid or a fee waiver requested. The appellate court also noted that, despite

7

receiving Cannon's fee waiver request on August 1, 2022, within the time for responding to the circuit court's directive to show cause, the Circuit Court Clerk nevertheless struck the notice of appeal on August 14, 2022. ECF 12-3.

***

Here, it appears that Cannon timely responded to the circuit court's directive to show cause why he had not paid the filing fee or requested a fee waiver by filing a request for fee waiver. Nevertheless the circuit court failed to rule on, or otherwise acknowledge the request for fee waiver before dismissing the case. In light of the foregoing Respondents are directed to supplement their response to the Petition by addressing the merits of Petitioner's claims.

ECF 13 at 1-2, 3.

### F.    Additional Post-Trial Proceedings

On November 7, 2014, Cannon filed a motion to correct an illegal sentence asserting that he was denied his right to a preliminary hearing and that because there was no proof that the weapon used in the crime was a handgun, he should not have been charged with weapon offenses. ECF 9-1 at 50-67.  The motion was denied on December 12, 2014. *Id*. at 68.  The court held that because Cannon was indicted by a grand jury, a preliminary hearing was not required, and because he "was not convicted of any weapons offenses, [] no prejudice of any kind could possibly exist." *Id*. Cannon appealed the ruling asserting the same claims and added a claim that the trial court should not have denied the motion without a hearing. ECF 9-1 at 75-110. The Appellate Court affirmed the denial of the motion, with the Court's mandate issuing on June 20, 2016. *Id*. at 128-33.  Cannon did not seek further review.

On March 22, 2016, Cannon filed a petition for writ of habeas corpus, which was summarily denied by the circuit court on February 7, 2019.  ECF 9-1 at 22, 350. Cannon filed an application for leave to appeal the denial of his state habeas petition on February 19, 2019. *Id*. at 351-54.  Cannon asserted that his "conviction [was] illegal" and his "petition should be granted as the lower court's decision [was] clearly erroneous." *Id*. at 351-53.  On August 30, 2019, the

8

Appellate Court dismissed Cannon's appeal. Cannon's September 12, 2019 Motion for Reconsideration was denied on October 21, 2019. *Id* at 370-73.  In denying that motion, the court found it was untimely (*id*. at 372), and that the motion was disallowed as a matter of law because Cannon's petition only challenged the legality of his conviction which was not permissible in a state habeas proceeding. *Id*. at 372-73.  The court's mandate issued on October 21, 2019. *Id*. at 374.

On April 1, 2020, Cannon filed another state habeas petition in the Circuit Court for Allegany County raising the following three claims: (1) the circuit court lacked subject matter jurisdiction; (2) the indictment was defective; and (3) he was illegally incarcerated. *Id*. at 406, 414-28. The petition was transferred to the Circuit Court for Prince George's County because Cannon sought relief from proceedings conducted in that court. *Id.* at 408.  The petition was denied on April 29, 2020, with the court finding Cannon's claims did not entitle him to relief. *Id*. at 444-45. Specifically, the court found it had subject matter jurisdiction to hear the case because Cannon was charged with a felony and the crimes were alleged to have occurred in Prince George's County, Maryland. *Id*.  Additionally, the court found that Cannon's claims regarding a defective indictment were "mistaken" because the indictment was signed by the Assistant State's Attorney and the True Bill by the foreperson: therefore, contrary to his claims, the appropriate signatures were present. *Id.*

On June 10, 2022, Cannon filed an application for review of sentence, which was denied without prejudice on July 19, 2022; Cannon was given 30 days to file an amended application. ECF 9-1 at 28, 529. On August 4, 2020, through counsel, Cannon filed an amended application for review of sentence and request for hearing. *Id*. at 532-35.  Cannon requested the court "consider either reducing his sentence or modifying the without parole of his sentence so that he can at least

avail himself of all rehabilitative programs and opportunities." *Id*. at 534. On March 9, 2023, the panel ordered Cannon's sentence remain as imposed. *Id*. at 547.

### G.    The Federal Petition

Cannon filed his federal petition on March 15, 2023.  ECF 1. The following claims are before the Court:

1.  Jury note: Cannon and his counsel were not present when the court responded to notes from the jury.

2.  Subject matter jurisdiction: Cannon was deprived of a preliminary hearing, improperly arraigned, and the indictment was invalid divesting the trial court of jurisdiction.

3.  Jury instructions: Improper jury instructions regarding assault caused an ambiguous verdict by the jury on the assault charge.

4.  Witness:  A witness' name was not read during voir dire but the witness was nevertheless allowed to testify.

5.  Ineffective assistance of counsel: Trial counsel withdrew a motion to suppress evidence without Cannon's consent.

ECF 1 at 5-11.

## II.    STANDARD OF REVIEW

### A.  AEDPA Deferential Review

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings."  *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005).  The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also*

*White v Woodall,* 572 U.S.415, 419-20 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement")).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted).

Further, under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court

decision was based on an unreasonable determination of the facts. *Id*. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. at 379.

## B. Ineffective Assistance of Counsel

The Sixth Amendment to the Constitution guarantees a criminal defendant effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, 580 U.S. 100 (2017). To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687-88. *See Williams*, 529 U.S. at 390. First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see Buck*, 580 U.S. 100.

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688; *Harrington*, 562 U.S. at 104. The central question is whether "an attorney's representation

amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690). The Supreme Court recently reiterated that the "first prong sets a high bar." *Buck*, 580 U.S. 100. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Id.* (citation omitted). The standard for assessing such competence is "highly deferential" and carries with it a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669. Judicial scrutiny of counsel's performance must be "'highly deferential'" and not based on hindsight. *Stokes v. Stirling*, 10 F.4th 236, 246 (4th Cir. 2021) (citing *Strickland*, 466 U.S. at 689).

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Id.* at 687. To satisfy the "prejudice prong," a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 580 U.S. 100. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687. A strong presumption of adequacy attaches to counsel's conduct—so strong in fact that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id*. at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not

reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Further, a court need not reach or address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

### III. ANALYSIS

#### A.    Claim One:

Cannon asserts that neither he nor his defense counsel was present when the trial court received and responded to two notes from the jury. ECF 1 at 5, 6. The record reflects that during deliberations, the jury requested to review the victim's written statement and a 911 tape recording played during the trial. ECF 9-3 at 112; ECF 24-2 at 1. As to the victim's written statement, the court instructed the jury: "That is not in evidence. So you must rely on the evidence that has been presented at trial in reaching a verdict." *Id*. at 113. As to the 911 tape, the trial court played it back for the jury "exactly" as it had been played during the trial. ECF 9-3 at 112-13. Defense counsel signed this note from the jury. ECF 24-2 at 1; ECF 9-1 at 495, 508.

The second note from the jury was in response to a question from the court regarding whether the jury wished to continue deliberating that evening or to return the following day. ECF 9-3 at 114. The jury responded, via a note, indicating that they would return the next day to

14

continue deliberations. *Id*. Before excusing the jury, the court instructed the jury to refrain from discussing the case and from performing outside research. *Id*. Immediately after excusing the jury for the night, the court directed counsel to approach the bench. *Id*. at 115.

The trial transcript (in its entirety) does not affirmatively indicate whether counsel and/or Cannon was present in the courtroom; instead, the transcript specifies when parties were not present. *See, e.g.*, ECF 9-3 at 112 ("Mr. Church left briefly and returned."); ECF 9-2 at 5 (indicating Cannon was not present in the courtroom).

Cannon raised this issue in his post-conviction proceedings, asserting that neither he nor his defense counsel was present when the trial court responded to these notes from the jury.  ECF 9-1 at 486; ECF 23-2 at 5.  After reviewing Cannon's claims regarding the jury notes, the post-conviction court denied the claim finding that the allegation of trial court error was not cognizable in a post-conviction proceeding and further finding that Cannon's assertion that his counsel was not present for the notes was unsubstantiated.  *Id*. at 508.  The post-conviction court noted that throughout the trial transcript there was no special notation as to whether Cannon or counsel was present, trial proceedings are presumed to be correct, and the burden to demonstrate otherwise rested with Cannon, which he had not met. *Id*.  Additionally, the post-conviction court observed that trial counsel testified during the proceedings that he would have made a record if Cannon was not present during any part of the trial.  *Id*. at 509.

This Court finds that the post-conviction court's factual determinations regarding the trial court's handling of the jury notes is supported by the record and not unreasonable. As explained, a thorough review of the trial transcripts demonstrates the absence of any indication when counsel or Cannon was present in the courtroom, only when they left and returned.[3]  Additionally, as to

---

[3] This makes sense from a practical and logical perspective, as counsel and defendant are generally required to be present during proceedings; thus, the event worthy of transcript notation by a court reporter is departure from the

the first note, the record evidence is clear that counsel was aware of the note given that his signature appears on the note. Moreover, counsel testified during the hearing that if Cannon had not been present, he would have requested his presence. ECF 23-2 at 59. Regarding the second note, the record makes plain that counsel for the State and defense were present when the court responded to the note because immediately after the trial judge dismissed the jury for the evening, he asked counsel to approach the bench. ECF 9-3 at 115.

Even if the state court's determination that there was no constitutional error was "contrary to," or "an unreasonable application of," Supreme Court precedent, Cannon is not entitled to relief unless he can demonstrate that the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (internal quotation marks omitted). Cannon has failed to demonstrate that the trial judge erred in how he responded to the notes. The post-conviction court's findings of facts surrounding the jury notes are entitled to a presumption of correctness. *See Johnson v. State of Md.*, 915 F.2d 892, 896 (4th Cir. 1990); *see also* 28 U.S.C. § 2254(e)(1).

Further, construed as an ineffective assistance of counsel claim, Cannon is unable to demonstrate prejudice as the trial court's decision not to provide the jury with a copy of the victim's statement, as it had not been entered into evidence ; and the court replayed the 911 tape that had been admitted precisely as it had been offered in evidence during the trial. Even if Cannon

---

courtroom, not presence in the courtroom. Thus, the court construes the transcript to communicate to a reader that counsel and a defendant are present unless noted to the contrary.

was not present as he asserts, he fails to show any resultant prejudice. *United States v. Tipton*, 90 F. 3d 861, 875 (4th Cir. 1996).

In sum, Cannon is not entitled to relief on this claim, and he has not presented clear and convincing evidence that the post-conviction court's factual findings were erroneous pursuant to 28 U.S.C. §2254 (e)(1)  The findings of the post-conviction court will not be disturbed here.

**B. Claim Two:**

In his second claim, Cannon asserts that the trial court lacked subject matter jurisdiction because he was improperly denied a preliminary hearing. He also asserts that his arraignment was improper because of defects in the indictment. ECF 1 at 5, 7-8.

A federal petition for a writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  For a claim of relief presented under § 2254 to be cognizable for review, the petitioner must assert a violation of federal law. *See Wilson v. Corcoran*, 562 U.S.1, 1 (2010) ("Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law."); *see also Young v. Warden, Md. Penitentiary*, 383 F. Supp. 986, 1009 (D. Md. 1974) ("It is axiomatic that only the violation or denial of some federal constitutional right, and not alleged errors in the interpretation or application of state law, can be the basis for federal habeas corpus relief."), *aff'd*, 532 F.2d 753 (4th Cir. 1976). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citations omitted); *see also Torrence v. Lewis*, 60 F.4th 209, 214 (4th Cir. 2023) (federal habeas petitioner "cannot receive federal habeas relief solely for an error of state law, even if one exists."). Cannon's claims regarding his preliminary hearing, arraignment, and indictment concern

the interpretation of Maryland law, not a constitutional violation, and therefore this claim is not cognizable.

Moreover, even if Cannon had somehow stated a constitutional claim on this issue, his claim is without merit on a habeas petition.  The record demonstrates that the indictment was signed by an assistant state's attorney and the jury foreman as required by Maryland Rule 4-202(b)(1).  *See* ECF 9-1 at 439-40.  Additionally, Cannon is mistaken in his belief that he was denied a required preliminary hearing. Because he was indicted, a preliminary hearing was not required under Maryland law.   MD. CODE ANN., CRIM. PROC. §4-103(c). Finally, any "defects in an indictment do not deprive a court of its power to adjudicate a case." *United States v. Cotton*, 535, U.S. 625, 630 (2002). Cannon is not entitled to relief on this claim.

### C. Claim Three

Cannon's third claim concerns the trial court's jury instruction regarding assault under Maryland law.  ECF 1 at 5, 8-9.  Cannon claims the trial court erred in instructing the jury on two modalities of second-degree assault: (1) the intent to frighten; and (2) battery.  *Id*. at 8-9.  The jury was instructed:

> The defendant is charged with the crime of second degree assault. And there are two types of second degree assault for you to consider. The first assault is intentionally frightening another person with the threat of immediate offensive physical contact or physical harm. In order to convict the defendant of assault, the State must prove, first, that the defendant committed an act with the intent to place the victim in fear of immediate offensive physical contact or physical harm; two, that the defendant had the apparent ability at that time to bring about the offensive physical contact or physical harm; three, that the victim reasonably feared immediate offensive physical contact or physical harm; and four, that the defendant's actions were not legally justified.

> The second type of second degree assault is battery. Assault is causing offensive physical contact to another person. In order to convict the defendant of assault, the State must prove, first, that the defendant caused offensive physical contact or physical harm to the victim; two, that the contact was the result of an intention reckless act of the defendant and was not accidental; and three, that the contact was not consented to by

the victim or not legally justified, and the State is required to prove one type of second degree assault.

The defendant is also charged with the crime of first degree assault. In order to convict the defendant of fist degree assault, the State must prove all of the elements of the second degree assault, which I just read, and must also prove, that first, the defendant used a firearm to commit assault, or the defendant intended to cause serious physical injury in the commission of the assault.

A firearm is a weapon that propels a bullet or shotgun pellets or missile or projectile by gunpowder of a similar explosive.

Serious physical injury means an injury that creates a substantial risk of death or causes serious and permanent or serious and protracted disfigurement or loss of impairment of the function of any bodily member or organ.

ECF 9-3 at 72-74.

Cannon asserts that the notes accompanying the Maryland Pattern Jury Instructions indicate that it is unlikely that both versions of second-degree assault are applicable. Therefore, in his view, the trial court's instruction on two forms of second-degree assault was erroneous. Ordinarily, jury instructions are matters of state law and therefore generally not the proper subject of habeas review. *See Nickerson v. Lee*, 971 F. 2d 1125, 11 27 (4th Cir. 1992) ("Ordinarily, 'instructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues,' *Grundler v. State of N.C.*, 283 F.2d 798, 802 (4th Cir. 1960), and are therefore not reviewable in a federal habeas proceeding.'"). Where the correctness of the instruction is challenged only under state law, the claim is not cognizable under 28 U.S.C. § 2254. *Engle v. Isaac*, 456 U.S. 107, 119 (1982). In any event, to the court's knowledge, Maryland Courts have not determined that instructing on both modalities of second-degree assault is an error. *Lawson v. Morgan*, No. CIV.A. PJM-09-1705, 2011 WL 1135895, at *16 (D. Md. Mar. 25, 2011). Further, Cannon does not explain how his right to due process was injured by the jury instruction regarding assault.

19

To be entitled to federal habeas relief based on an error in jury instructions, Cannon must demonstrate that the instruction alone so infected the trial that the resulting conviction violates due process. Cannon faces an additional hurdle where, as here, he alleges a trial court error that the State court subjected to harmless error review. Under such circumstances, a federal court cannot grant habeas relief without applying both the test outlined in *Brecht*, 507 U.S. 619, and the deferential review required by AEDPA. *Brown v. Davenport*, 596 U.S. 118 (2002).

*Brecht* requires a state prisoner seeking to challenge his conviction in collateral federal proceedings to show that the error had a "substantial and injurious effect or influence" on the outcome of his trial. *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). A "'substantial or injurious effect or influence'" means "actual prejudice." *See Brecht*, 507 U.S. at 637–38. "[A] federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petitioner has cleared both tests." *Brown*, 596 U.S. at 134 (emphasis in *Brown*). In sum, to succeed on this claim, Cannon must convince this federal habeas court that there is "'grave doubt'" about "whether the trial error affected the verdict's outcome," *id.* at 135-36, and demonstrate that every "fairminded jurist would agree that an error was prejudicial." *Id.* at 136. Cannon fails to do so.

Under Maryland law, the court is required to instruct the jury on the applicable law upon a party's request where ""(1) the instruction is a correct statement of law; (2) the instruction is applicable to the facts of the case; and (3) the content of the instruction was not fairly covered elsewhere in instructions actually given." *Dickey v. State*, 404 Md. 187, 197–98 (2008). A jury instruction is proper "if the evidence is sufficient to permit a jury to find its factual predicate." *Bazzle v. State*, 426 Md. 541, 550 (2012). This standard merely requires "some evidence" supporting the requested instruction. *Dykes v. State*, 319 Md. 206, 216–17 (1990).

Independent review of the trial transcript demonstrates there was sufficient evidence to instruct the jury on both modalities of second-degree assault. The intent to frighten modality is demonstrated where: (1) "the defendant commits an act with the intent to place a victim in fear of immediate physical harm"; (2) "the defendant has the apparent ability, at the time, to bring about the physical harm"; and (3) "the victim is aware of the impending" physical harm. *Jones v. State*, 440 Md. 450, 455 (2014) (cleaned up). During Cannon's trial, the victim testified that he saw Cannon come out of his apartment building holding a gun.  ECF 9-2 at 122.  Thus, there was "some evidence" to support the instruction for second-degree assault based on intent to frighten.

Second-degree assault under the battery modality is demonstrated where: "(1) the defendant caused offensive physical contact with, or harm to, the victim; (2) the contact was the result of an intentional or reckless act of the defendant and was not accidental; and (3) the contact was not consented to by the victim or was not legally justified." *Nicolas v. State*, 426 Md. 385, 403–04 (2012). At trial, the victim testified that, as he attempted to drive away from the scene, he heard gunshots and was struck in his lower back and right shoulder. ECF9-2 at 124-25.  Thus, the instruction concerning second-degree assault under the battery modality was also proper.

Lastly, throughout Cannon's state proceedings, he also asserted trial court error in instructing the jury on the firearm theory of first-degree assault.  He seemingly makes this argument because after the state rested its case, his motion for judgment of acquittal was granted as to charges regarding use of a regulated firearm or handgun. The trial court found there was insufficient evidence generated to demonstrate that the firearm used was either a regulated firearm or a handgun under Maryland law. Nevertheless, under Maryland law, assault with any firearm, including a non-regulated firearm, constitutes first-degree assault.  *Brown v. State*, 182 Md. App. 138, 179 (2008).  Evidence that a firearm was used during the incident was amply demonstrated

by the victim's testimony that he saw a gun, heard gunshots, and was shot in his back and shoulder.

In summary, Cannon's claims regarding alleged errors in the jury instruction are not cognizable; regardless, the jury instructions were appropriate under Maryland law. Cannon is not entitled to relief on this claim.

### D.      Count Four:

Next, Cannon asserts he received ineffective assistance of counsel when his trial attorney did not object to the failure to include Detective Mason's name in the potential list of witnesses during voir dire. ECR 1 at 9-10. During voir dire, prospective jurors were read the names of potential witnesses, including several detectives and officers, and asked to indicate if they recognized any of the names. ECF 9-2 at 12. Juror 29, a police officer, was the only prospective juror that responded to indicate that juror was "familiar with names." *Id*. That juror was later struck by defense counsel. *Id*. at 83. Detective Mason, who showed the victim a photo array that resulted in the identification of Cannon, was not included in the list of potential witnesses read to the jury and he testified during trial regarding presentation of the photo array.

The post-conviction court determined that Detective Mason's name should have been read during voir dire but there was no prejudice in the oversight. ECF No. 9-1 at 505. The post-conviction court found that Cannon had "the burden of establishing a reasonable probability that the outcome of the trial would have been different" but he had "not met that burden." *Id*. "Even without Detective Mason's testimony the evidence against the petitioner is substantial. Mr. Kirby testified that Petitioner Cannon shot him while he attempted to repossess a vehicle. The vehicle was identified in the State's Exhibit as a 2007 Black Chevy Tahoe that Rodrick Cannon owned." *Id*. Additionally, the victim identified Cannon during trial proceedings as the man who shot him. Having independently reviewed the record, this Court finds that the post-conviction court's

determination was not contrary to clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented. Applying the *Strickland* standard to this claim, Cannon has not demonstrated the requisite prejudice necessary to secure relief for ineffective assistance of counsel.  The decision of the post-conviction court shall not be disturbed. 28 U.S.C. § 2254(d).

**E. Claim Five.**

Lastly, Cannon asserts he received ineffective assistance of counsel when his trial attorney withdrew the  motion to suppress the photo array without his consent.  ECF 1 at 1. During trial, Detective Mason testified that he administered the photo array to the victim the day after the shooting. ECF 9-3 at 39-43. Mason explained that he provided an array of six photographs to the victim and instructed the victim that the assailant  "could" or "could not be in this photo lineup." *Id*. at 42.  Mason pulled a table over to the victim's hospital bed and laid out the photographs but before he could "even put [the sixth photo] on the table, [the victim] pointed [Cannon] out" stating "this is the guy who shot me." *Id*. Mason clarified that despite the victim being in the hospital, he understood the victim and the victim "gave [him] a complete detailed statement of everything  that happened that night." *Id*. at 49-50.

During the post-conviction hearing, trial counsel testified that after he discussed the case with the State's Attorney, he did not believe there was a reason to make an issue of the photo array and further determined that pursing the motion "might have been counterproductive". ECF 23-2 at 60.  He explained that he withdrew the motion to suppress after he reviewed the actual photo array and determined that he did not have a basis to challenge it. *Id*. at 64. He also explained that he was "hesitant to have a hearing on a photo spread with the victim being the person that picked

out the picture" and "to preserve the victim's testimony for trial were he to be unavailable." *Id*. at 63-64.

The postconviction court denied Cannon's ineffective assistance claim on this issue because he failed to show prejudice under *Strickland*. The post-conviction court stated that the "evidence presented in the trial was overwhelming":

> Mr. Kirby the victim in this matter saw and spoke to the Petitioner before he was shot. Mr. Kirby testified that he looked the shooter in his face. The shooter stated that the Tahoe was "his truck" and the Tahoe was determined by police [as] owned by the Petitioner.

ECF 9-1 at 507.

Absent clear and convincing evidence to the contrary, a claim that counsel's decision was premised on trial strategy cannot be disturbed. *Evans v. Thompson*, 881 F.2d 117, 125 (4th Cir. 1989)  Having examined the post-conviction court's ruling as well as having independently examined the record, this Court is satisfied per *Strickland* that Cannon has not demonstrated the prejudice necessary to establish his trial attorney's ineffectiveness. 28 U.S.C. § 2254(d); *see also Stamper v. Muncie*, 944 F.2d 170, 178 (4th Cir. 1991) (challenge to counsel's trial decisions and/or tactics amounted to no more than "Monday morning quarter backing"). The postconviction court's determination that there was no prejudice was not an unreasonable application of *Strickland* and is entitled to deference under § 2254. Its finding will not be disturbed.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases provides that "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  To obtain a certificate of appealability, a habeas petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Buck*, 580 U.S. at 115; *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).  When a district court rejects constitutional

claims on the merits, a petitioner satisfies this standard by demonstrating that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 580 U.S. at 115. (citation omitted).  When a petition is denied on procedural grounds, the petitioner meets the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Cannon has not made the requisite showing.  Accordingly, the Court declines to issue a certificate of appealability. Cannon may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003).

For the foregoing reasons, the Petition is denied.  A separate Order follows.

/S/

_____
Julie R. Rubin
United States District Judge

June 12, 2026

25